PEOPLE v STAFFNEY

Docket No. 102122. Submitted August 7, 1990, at Grand Rapids.
    Decided December 18, 1990; approved for publication February
    22, 1991, at 9:00 A.M.

Harold Staffney was convicted of first-degree murder and posses-
    sion of a firearm during the commission of a felony following a
    jury trial in the Kent Circuit Court, Robert A. Benson, J. The
    defendant appealed, raising several issues.

The Court of Appeals *held:*

1. The circuit court did not err in remanding the case to the
magistrate to hear additional evidence. A circuit court has the
authority to remand once it has jurisdiction of a criminal case
and may remand to the magistrate for the taking of additional
evidence which was unavailable at the earlier examination.

2. The Court declined to reach issues raised by the defendant
regarding the sufficiency of the evidence at the first prelimi-
nary examination, the court's ruling that the victim's state-
ment was a dying declaration and on its admissibility, because,
under the circumstances of this case, any error would have
been harmless.

3. The defendant's right to be present in the courtroom was
not violated upon his expulsion from the courtroom after
striking his trial counsel in front of the jury. He was able to
listen to the remainder of the trial in another room through
the aid of a loudspeaker system and he was permitted to send
notes to defense counsel regarding the proceedings. A defen-
dant need not first be warned before being removed where the
nature of the defendant's disruption consists of violence toward
another person. The denial of the defendant's right to face-to-
face confrontation of the witnesses against him was necessary
to further the important public policy of the proper administra-
tion of criminal justice, and the reliability of the testimony was
assured by testimony under oath, cross-examination, and obser-
vation by the trier of fact of the demeanor of the witnesses. In

REFERENCES

Am Jur 2d, Appeal and Error § 962; Criminal Law §§ 905, 929, 966.
Accused's right, under Federal Constitution to be present at his
    trial— Supreme Court cases. 25 L Ed 2d 931.

addition, most of the witnesses who had the ability to wrongfully implicate the defendant had testified before the defendant was expelled from the courtroom.

4. The trial court properly denied the defendant's motion for a mistrial or for substitute counsel.

5. Because the defendant failed to object to alleged erroneous remarks by the prosecutor during closing argument and any error could have been cured by a jury instruction had the defendant objected, error requiring reversal did not occur.

6. The jury was properly instructed.

Affirmed.

1. CRIMINAL LAW — CIRCUIT COURTS — DISTRICT COURTS — ADDITIONAL EVIDENCE.

A circuit court with jurisdiction of a criminal case may remand the case to the district court for the taking of additional evidence.

2. CRIMINAL LAW — TRIAL — DISRUPTIVE DEFENDANTS — RIGHT TO CONFRONT WITNESSES.

The guarantees that a criminal defendant be present in the courtroom at every stage of trial and meet face to face with witnesses appearing before the trier of fact are not absolute and must be interpreted in the context of the necessities of trial and the adversary process, and a disruptive defendant may be denied the rights where necessary to further an important public policy and where the reliability of the testimony is otherwise assured (US Const, Am VI).

3. CRIMINAL LAW — TRIAL — DISRUPTIVE DEFENDANTS — MISTRIAL.

A defendant may not perpetrate chaos during trial and then obtain a mistrial on the basis of prejudice.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *William A. Forsyth,* Prosecuting Attorney, *Timothy K. McMorrow,* Chief Appellate Attorney, and *Gregory T. Boer,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Fred E. Bell*), and Harold Staffney, in propria persona, for the defendant on appeal.

Before: DANHOF, C.J., and SULLIVAN and NEFF, JJ.

PER CURIAM. Following a jury trial, defendant was convicted of first-degree murder, MCL 750.316; MSA 28.548, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). He now appeals as of right, raising several issues both through his appellate attorney and in propria persona. We affirm.

Defendant raises several issues with regard to his preliminary examination. The first issue pertains to the circuit court's remanding the case to the district court, absent a finding of an abuse of discretion by the district court, to permit the prosecutor to present evidence of premeditation through a witness who failed to appear at the original examination.[1] We believe that the circuit court did not err in remanding the case to the district court for the reasons stated by Chief Justice RILEY in her dissent in *People v Stafford,* 434 Mich 125, 136-139; 450 NW2d 559 (1990), joined by Justices BOYLE and GRIFFIN.[2]

Defendant, in propria persona, raises three other issues with regard to the preliminary examination: (1) that the evidence presented at the original preliminary examination was insufficient to bind over defendant on the charge of second-degree murder, (2) that the district court exceeded its authority by ruling on the admissibility of a "dying declaration," and (3) that even if it did not exceed its authority, it abused its discretion by

[1] Following the original preliminary examination, the district court declined to bind over defendant on either first-degree murder or open murder and, instead, bound over defendant on second-degree murder. The court also denied the prosecutor's motion for an adjournment to secure the attendance of an important witness who could supply evidence of the element of premeditation. The district court, however, left open the possibility of the prosecutor's later taking procedural steps to ensure that defendant stood trial on the charge of first-degree murder.

[2] The majority opinion in *Stafford* did not reach the issue. *Stafford,* 434 Mich 132.

ruling that the victim's statement was a "dying declaration." We decline, however, to reach these issues because, even if they have merit, any error would have been harmless under the circumstances of this case. See *People v Hall,* 435 Mich 599; 460 NW2d 520 (1990).

We next address defendant's argument that he was denied his constitutional right of confrontation when he was expelled from the courtroom and ordered to listen to the remainder of the trial from a library with the aid of a loudspeaker system. Defendant was permitted to send notes to defense counsel regarding the proceedings. The event culminating in defendant's expulsion consisted of defendant's striking his trial counsel in the face in front of the jury on the third day of trial. Trial was adjourned for five days. As a result of the assault, trial counsel suffered a split lip and the loss of two teeth.

Pertinent to the issue in this case, we note that the Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to be present in the courtroom at every stage of his trial, *Illinois v Allen,* 397 US 337, 338; 90 S Ct 1057; 25 L Ed 2d 353 (1970), reh den 398 US 915 (1970), and a " 'face-to-face meeting with witnesses appearing before the trier of fact,' " *Maryland v Craig,* 497 US —; 110 S Ct 3157-3162; 111 L Ed 2d 666, 677 (1990), quoting *Coy v Iowa,* 487 US 1012, 1016; 108 S Ct 2798; 101 L Ed 2d 857 (1988). These rights, however, are not absolute. They must be "interpreted in the context of the necessities of trial and the adversary process." *Craig,* 111 L Ed 2d 681. On appeal, defendant focuses on his right to confront witnesses face-to-face.

*Allen* is an example of how Sixth Amendment rights are interpreted in the context of the necessities of trial and the adversary process. In *Allen,*

the Supreme Court held that a defendant's right to be present at trial was not violated where he was removed from the courtroom for his disruptive behavior:

[A] defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings. [*Id.*, 397 US 343.]

In so concluding, the Court noted that it is essential to the proper administration of criminal justice that dignity, order, and decorum be the "hallmarks" of court proceedings. Consonant with this principle, trial judges confronted with disruptive, defiant defendants must have "sufficient discretion to meet the circumstances of each case." *Id.*

Here, there were indications before trial that defendant might be disruptive at trial. During a pretrial hearing, defendant "stomped out" of the courtroom and then wrote a letter of apology to the trial judge. Also, more importantly, defendant moved to remove his trial counsel before trial. The court denied defendant's motion. Defendant indicated that there might be "physical contact" between him and trial counsel. Obviously, his threat was to be taken seriously because, on the third day of trial, he struck trial counsel, causing a rather serious injury.

We acknowledge that the trial judge failed to warn defendant before removing him from the

courtroom that he would be removed if his disruptive behavior continued. However, where the nature of a defendant's disruption consists of violence toward another person, we are reluctant to hold that the defendant must first be warned before being removed. Defendant should not be permitted "one free swing" at his attorney. When the trial continued after the five-day adjournment, defendant requested that he be permitted in the courtroom when he testified. The trial judge granted defendant's request, but, in the same breath, noted that he did not trust defendant to behave.

Under the facts of this case, we believe that defendant's right to be present in the courtroom was not violated. The violent outburst, especially after a pretrial threat of "physical contact," was such that the trial could not be carried on with defendant in the courtroom. Even though defendant was expelled from the courtroom, he was able to hear the proceedings through a loudspeaker system and to communicate with trial counsel. The trial judge handled the situation in a constitutionally permissible way.

Another example of how Sixth Amendment rights are interpreted in light of the necessities of trial and the adversary process is *Craig*. *Craig* involved the Sixth Amendment right to face-to-face confrontation: The defendant argued that permitting a child witness in a child abuse case to testify against him at trial, outside his physical presence, by one-way closed-circuit television violated his right to face-to-face confrontation of the witnesses against him. A defendant can be denied such a right, the Court held, if the denial is "necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.,* 111 L Ed 2d 682.

Both of those factors were met in this case. First, as in *Craig,* the reliability of the testimony and adversariness were assured in this case. The presence of other elements of confrontation—testimony under oath, cross-examination, and the trier of fact's observation of the witnesses' demeanor—ensures that the testimony was reliable. Second, the way the trial judge handled the situation was necessary to further an important public policy: the proper administration of criminal justice. Hence, under the *Craig* analysis, defendant was not denied his right to face-to-face confrontation.

In conclusion, although defendant was not permitted to be present in the courtroom for the last two days of trial, he was not denied a confrontation right. Maintaining dignity, order, and decorum is essential to the important policy of the proper administration of justice. Moreover, the reliability of testimony and adversariness were assured by testimony under oath, cross-examination, and the trier of fact's observing the demeanor of the witnesses. Finally, we note that defendant was expelled from the courtroom after all but one of the witnesses who were present at the party where the offenses occurred testified. After defendant's expulsion, the bulk of the testimony consisted of medical testimony and the testimony of police officers. Therefore, most of the witnesses who had the ability to "wrongfully implicate" defendant had testified before defendant was expelled from the courtroom. *Craig,* 111 L Ed 2d 679.

Defendant also argues that the trial court abused its discretion by denying his motion for a mistrial or, in the alternative, for substitute counsel. We disagree. In denying defendant's motion, the trial court noted that it believed that defendant's actions were calculated because of defendant's warning before trial that there would be "physical contact" and that defendants should not

be permitted to "run the courts." As a panel of this Court held in *People v Siler,* 171 Mich App 246, 256; 429 NW2d 865 (1988), "We will not condone or allow a defendant to perpetrate chaos at his own trial and then obtain a mistrial on the basis of prejudice." For the same reason, we believe that the court did not abuse its discretion in denying the motion for substitute counsel. We further note that, although not controlling, providing substitute counsel midtrial under the facts of this case would have disrupted the judicial process. *People v Flores,* 176 Mich App 610, 613-614; 440 NW2d 47 (1989); *People v Wilson,* 43 Mich App 459, 462; 204 NW2d 269 (1972).[3]

Also without merit is defendant's argument that prosecutorial remarks in closing argument denied him a fair trial. Defendant failed to object below to the comments. Because any prejudice could have been cured by a curative instruction, error requiring reversal did not occur. *People v Duncan,* 402 Mich 1, 16-17; 260 NW2d 58 (1977).

Finally, we address defendant's argument that the trial court's supplemental instructions, specifically its "examples," constitute error requiring reversal. We disagree. Defendant failed to object below. Reviewing the instructions as a whole, manifest injustice did not occur because the instructions fairly presented to the jury the issues to be considered and sufficiently protected the rights of defendant. *People v Curry,* 175 Mich App 33, 39; 437 NW2d 310 (1989).

Affirmed.

---

[3] At this point, we note that defendant, in propria persona, states as a question presented that he was denied effective assistance of counsel because trial counsel failed to call certain witnesses. However, defendant failed to make a corresponding argument. Therefore, he abandoned the issue. See *People v Sowders,* 164 Mich App 36, 49; 417 NW2d 78 (1987). Even if we reviewed the issue, it is without merit because such decisions are a matter of trial strategy. *People v Julian,* 171 Mich App 153, 159; 429 NW2d 615 (1988).